UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES W. HERRMANN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:19-cv-1023

Bowman, M.J.

**MEMORANDUM OF OPINION
AND DECISION**

Plaintiff James Hermann filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. The parties have consented to disposition of this matter by the Magistrate Judge. (Doc.4). For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.    Summary of Administrative Record**

On July 21, 2016, Plaintiff protectively filed his current application for DIB, alleging a disability onset date of June 12, 2011 (Tr. 237-39). Plaintiff later amended his alleged onset date to May 1, 2015. Plaintiff was last insured for DIB through December 31, 2016 (Tr. 17, 167, 199). Thus, Plaintiff was required to prove he was disabled from his alleged disability onset date of May 1, 2015 through December 31, 2016.

After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On September 24, 2018, ALJ William Diggs held an evidentiary hearing at which Plaintiff appeared with counsel.

The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 30-48). On January 15, 2019, the ALJ denied Plaintiff's applications in a written decision. (Tr. 15-24). Plaintiff now seeks judicial review of the denial of his application for benefits.

Plaintiff was born in August 1974 and was 42 years old on his last date insured. (Tr. 23). He graduated from high school and has past relevant work as a production worker at a chemical company. (Tr. 256).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "chronic pain in cervical spine with radiculopathy, status post bilateral wrist surgery, obesity, affective disorder, and anxiety." (Tr. 17). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a range of sedentary work with the following limitations:

> He can only occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can also occasionally balance, stoop, kneel, crouch or crawl. Additionally, he should avoid all exposure to work hazards such as dangerous machinery and unprotected heights. Regarding his mental limitations, he is restricted to simple, routine tasks in an environment with no fast paced, strict production demands. He is also limited to occasional contact with supervisors, co-workers and the general public. Finally, he should be exposed to only occasional changes in work setting with those changes being explained in advance.

(Tr. 19). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that although Plaintiff is unable to perform his past relevant work, Plaintiff could perform other work in the national economy including such jobs as document preparer,

2

assembler, and inspector. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id*.

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that: 1) the ALJ's decision contains material inconsistencies and improperly evaluated the medical records; 2) the ALJ improperly evaluated Plaintiff's nervous impairments and chronic pain; 3) the ALJ improperly evaluated Plaintiff's subjective complaints and 4) the ALJ relied on improperly hypothetical questions to the vocational expert. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's decision is supported by Substantial Evidence**

Plaintiff argues first that the ALJ's decision contains material inconsistencies and improperly evaluated the medical records. In this regard, Plaintiff appears to argue that the ALJ failed to discuss certain medical records and objective testing related to Plaintiff's mental impairments that would have impacted Plaintiff's ability to work.

Notably, Plaintiff contends that "his ADHD was shown by objective testing done in January 2017 showing that he is easily distracted and confused and finds it hard to focus on tasks." (Doc. 7; citing Tr. 652). Plaintiff further contends that the ALJ in 2019 did not discuss the medical records at Tr. 639 and 644-653 or the form at Tr. 796-801. As a result, Plaintiff argues that the Court cannot now review how much weight the ALJ assigned to these records. Plaintiff's contention is unavailing.

At the outset, the Commissioner asserts that all the records that Plaintiff has cited originated after the relevant period under consideration: after Plaintiff's date last insured of December 31, 2016. (Id.; Tr. 17). (DIB date last insured is December 31, 2016). Thus, the Commissioner contends that those records are irrelevant, and contrary to Plaintiff's contentions, the ALJ was not required to discuss them. Notably, only the evidence originating during the relevant period and describing his condition during the relevant

5

period (from Plaintiff's alleged onset date though his date last insured) was relevant to the ALJ's analysis. See SSR 83-10 (For DIB, a period of disability cannot begin after a worker's disability insured status has expired); see also, *Gibson*, 678 F.2d at 920. Consistent with that guidance, the ALJ repeatedly described his findings as referencing Plaintiff's condition "through the date last insured." (Tr. 18-19, 22-24).

Furthermore, although Plaintiff references "medical records at Tr. 639" he provides no description of the medical records. Id. As noted by the Commissioner, the "medical records" Plaintiff is referencing at Tr. 639 are the results of an unfamiliar type of testing: "IVA-2 Standard Scale Analysis." (Tr. 639-644). Plaintiff does not explain the testing, indicate who administered it, or develop this argument in any meaningful way. Notably, Plaintiff fails to provide any argument that would assist this Court in determining whether Plaintiff was more limited than what the ALJ determined in the RFC.

It is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf or to take the portions of the record cited by Plaintiff's counsel and attempt to craft an argument that supports the general issues he referenced in the most perfunctory manner. *Gray v. Astrue*, 4:09–CV–01468, 2010 WL 2106200 (N.D. Ohio Mar. 31, 2010) report and recommendation adopted sub nom. *Gray v. Comm'r of Soc. Sec.*, 4:09CV1468, 2010 WL 2106196 (N.D. Ohio May 25, 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")). *See also Hollon v. Comm'r of*

*Soc. Sec.*, 447 F.3d 477, 490 (6th Cir. 2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal....").

As such, the undersigned finds that ALJ's decision to be substantially supported in this regard. Moreover, as detailed below, the ALJ properly evaluated Plaintiff's mental impairments during the relevant period.

### C. Evaluation of Mental Impairments

Plaintiff argues that the ALJ's mental RFC assessment is not supported by substantial evidence because the ALJ did not properly evaluate the functional limitations associated with Plaintiff's Obsessive Compulsive Disorder (OCD) or Attention Deficit Hyperactivity Disorder (ADHD).

As noted by the Commissioner, the 15 treatment records from the relevant period contain no references to any complaints of Obsessive Compulsive Disorder (OCD) or Attention Deficit Hyperactivity Disorder (ADHD) symptoms. (Tr. 498, 503, 508, 513, 518, 523, 527, 532, 539, 543, 548, 553, 558, 562, 767). As such, the Commissioner argues that Plaintiff's complaints of severe OCD or ADHD symptoms after his date last insured (as he did at the September 2018 administrative hearing) has no relevance to his current claim where only his condition prior to his date last insured is at issue. Therefore, the ALJ was not required to discuss this evidence, nor incorporate limitations, into his RFC or hypothetical question to the Vocational Expert, as again, those limitations were not documented during the relevant period under consideration. See *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (an ALJ is only required to incorporate those limitations accepted as credible by the fact-finder.)

7

Plaintiff further argues that the ALJ's mental RFC failed to properly weigh the findings of Dr. Berg, the consultative psychologist that examined Plaintiff on September 3, 2016. Dr. Berg found that Plaintiff functioned within the average range of intelligence and did not display any major impairments in memory or behavior. Dr. Berg further found that Plaintiff generally performed at an appropriate pace and his concentration was fair. Dr. Berg opined that Plaintiff's anxiety and reported obsessive tendencies would likely interfere with his concentration, memory and ability to handle workplace stresses. (Tr. 428). The ALJ assigned some weight to Dr. Berg's opinion noting that it was generally consistent with the record. (Tr. 22)

Plaintiff claims that the findings of Dr. Berg are inconsistent with the ALJ's mental RFC finding. In this regard, he claims that Dr. Berg's findings that Plaintiff "would have at least some difficulty dealing with others, dealing with stress, and persisting in sustaining work for 40 hours a week" are not incorporated into the ALJ's mental RFC finding. Id. Plaintiff's contention lacks merit.

As noted above, the ALJ limited Plaintiff to occasional contact with supervisors, co-workers and the general public which adequately accommodated Plaintiff for possibly having "some difficulty" in interacting with others in a work setting. (Tr. 19). These limitations are consistent with Dr. Berg's findings. The ALJ's mental RFC finding adequately limited Plaintiff's potential exposure to stress by restricting Plaintiff to simple, routine tasks in an environment with no fast paced, strict production demands; only occasional contact with supervisors, coworkers and the general public; and only occasional changes in work setting with those changes being explained in advance. (Tr.

8

19).  For these reasons, the ALJ's decision is supported by substantial evidence in this regard.

### D. Evaluation of Pain and Subjective Complaints

Plaintiff further argues that the ALJ improperly evaluated his subjective complaints of pain. Namely, Plaintiff argues that record evidence supports his diagnosis of chronic pain and radiculopathy, including numerous prescriptions, chiropractic treatment, and physical therapy.  Plaintiff also claims that the ALJ "failed to evaluate the psychological basis" for Plaintiff's pain, which included his "OCD symptoms of checking." (Doc. 7 at 10). Additionally, Plaintiff also appears to argue that the ALJ's evaluation of Plaintiff's subjective complaints included a discussion of medical records with a statement that Plaintiff was overmedicated. Again, Plaintiff's contentions are not well-taken.

In enacting SSR 16-3p, the Agency removed the word "credibility" from a prior rule (SSR 96-7p), and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). SSR 16-3p emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. The elimination of the word "credibility" in the revised rule can be semantically awkward since virtually all of the prior case law uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18,

9

2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

A reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). It remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, in evaluating subjective allegations, the ALJ considered that Plaintiff's subjective allegations were not entirely consistent with the medical evidence and other evidence of record. (Tr. 20-21). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). In this regard, the ALJ noted x-rays and imaging of Plaintiff's back indicated normal findings and "minimal degenerative changes."  (Tr. 20, 21). The ALJ also noted that Plaintiff's physician's statements that objective testing indicated that Plaintiff was being over-medicated as the clinician found no significant pathology on Plaintiff's [2013]

10

MRI to warrant the amount of medication Plaintiff's was taking. (Tr. 21, 715). The ALJ also considered Plaintiff's course of treatment, noting that Plaintiff underwent chiropractic treatment, participated in a pain management program, and received opioid pain medication. (Tr. 21).  The ALJ's findings in this regard comport with Agency regulations and controlling law.

The Court "may not disturb" an ALJ's subjective symptom evaluation "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). While Plaintiff may disagree with the ALJ's subjective symptom evaluation, he fails to demonstrate a basis for overturning the finding, especially given the great deference that an ALJ's finding is entitled to on review. *See Walters*, 127 F.3d at 531. The ALJ followed the regulations and rulings when considering Plaintiff's subjective reports and reasonably found that his complaints were not fully credible. Accordingly, the ALJ's decision is substantially supported in this regard.

### E.  Vocational Errors

Plaintiff's final assertion of error builds on his earlier claims. Plaintiff argues that at Step 5 of the sequential analysis, the ALJ used an improper hypothetical, and that therefore the testimony by the vocational expert in response to the hypothetical does not provide substantial evidence to uphold the decision in this case. Specifically, Plaintiff maintains that the ALJ erred by failing to include "days missed and extra breaks required with the crying spells and the symptoms of OCD and the ADHD.  Plaintiff further contends that the hypothetical question should have included the limitations of Dr. Berg and the moderate limitations on concentration, persistence, and pace.

For the reasons previously stated above, I find no error. *See Jordan v. Com'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing.... The claimant, however, retains the burden of proving [his] lack of residual functional capacity."). As detailed above, the ALJ properly evaluated Plaintiff's mental impairments and properly accommodated his functional limitations associated thereto. The ALJ reasonably relied on the vocational expert's testimony to show that Plaintiff could perform other work, in response to a well-supported hypothetical question. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

Accordingly, substantial evidence supports the ALJ's RFC determination and his decision that Plaintiff's impairments were not disabling. *See Longworth v. Comm'r of Soc. Sec*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case is **CLOSED.**

   *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge